# In the United States Court of Federal Claims

No. 08-791C
Filed: December 16, 2009
**TO BE PUBLISHED**

```
******************************************
                                         *
UNITED SURETY & INDEMNITY                *
COMPANY,                                 *
                                         *
         Plaintiff,                      *
                                         *    Motion for Reconsideration, RCFC 59(a);
v.                                       *    Doctrine of Equitable Subrogation.
                                         *
THE UNITED STATES,                       *
                                         *
         Defendant,                      *
                                         *
and                                      *
                                         *
SELPA CONSTRUCTION & RENTAL              *
EQUIPMENT,                               *
                                         *
         Third-Party Defendant.          *
                                         *
******************************************
```

**Antonio Borres-Otero,** Saldaña & Saldaña-Egozcue, P.S.C., San Juan, Puerto Rico, Counsel for Plaintiff.

**Jeffrey Andrew Regner,** United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND ORDER DENYING RECONSIDERATION

On July 13, 2009, Plaintiff filed a Motion For Reconsideration ("Pl. Mot.") of the June 30, 2009 Memorandum Opinion and Final Order in *United Surety and Indemnity Co.* v. *United States*, 87 Fed. Cl. 580 (2009). For the reasons discussed herein, Plaintiff's Motion For Reconsideration is denied.

## I.     STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION, PURSUANT TO RCFC 59.

A motion for reconsideration must be supported "by a showing of extraordinary circumstances which justify relief." *Caldwell* v. *United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004)

(quoting *Fru-Con Constr. Corp.* v. *United States,* 44 Fed. Cl. 298, 300 (1999)).  The decision to grant or deny a motion for reconsideration lies within the discretion of the court.  *Yuba Natural Res., Inc.* v. *United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990) (holding that "the decision whether to grant reconsideration lies largely within the discretion of the [trial] court").  A movant cannot prevail by "merely reasserting arguments which were previously made and were carefully considered by the court."  *Id*.; *see also Bishop* v. *United States*, 26 Cl. Ct. 281, 286 (1992) (holding that reconsideration "is not intended to give an unhappy litigant an additional chance to sway the court.").  To prevail on a motion for reconsideration, a movant must show that: (1) an intervening change in the controlling law has occurred; (2) new evidence is now available; or (3) the motion is necessary to prevent manifest injustice.  *Fru-Con Constr. Corp.,* 44 Fed. Cl. at 301.

## II.   DISCUSSION.

### A.   The Parties' Arguments.

#### 1.   Plaintiff's Argument.

Plaintiff argues that the court's holding in *United Surety* did not address Plaintiff's "pleading that the Government had to take [Plaintiff's] interest into account prior to disbursing funds to the Bank and the [Third-Party Defendant], and that by not doing so it abused its discretion causing damages." Pl. Mot. at 4.  Plaintiff contends that "the Government owed it *some* consideration in the managing of funds in addition to and regardless of, any duty that might arise after notice of default or imminent default."  *Id*. at 10 (emphasis in the original).  As the United States Court of Appeals for the Federal Circuit held in *Balboa Ins. Co.* v. *United States*, 775 F.2d 1158, 1160 (Fed. Cir. 1985), "a surety, as a bondholder, is as much a party to the Government contract as the contractor." Therefore, Plaintiff concludes that, "even if the heightened standard of care towards a surety's interest is not triggered if notification by the surety is not adequate, as the court has concluded, or by actual performance, as [Plaintiff] argued, the Government could not ignore the surety's interest." Pl. Mot. at 11.  Plaintiff asserts that this claim specifically was pled in the November 4, 2008 Complaint ("Compl.").  *Id*. at 12 (citing Compl. ¶ 25) ("The [Government] was required to take into account prior to disbursing the Check to Scotiabank the Former Contractor.  By not doing so the USPS abused its discretion and caused damages to USIC in the amount of $201,795.00.").

Plaintiff also argues that the Government has a duty to exercise discretion in the administration of the contract "for the purpose of promoting performance."  *Id.* at 15 (citing *United States Fire Ins.* v. *United States*, 78 Fed. Cl. 308, 334 (2007)).  The Government abused this discretion when it disbursed the progress payment, knowing it would not be used to complete the construction project, but instead to satisfy the Third-Party Defendant's debt. *Id.* at 16-18.  Therefore, Plaintiff's claims should survive a motion to dismiss.  *Id.*

In addition, the court failed to address Plaintiff's claim that the Government, in making the disputed progress payment, violated the duty to administer the contract in a responsible manner.  *Id*. at 18.  Plaintiff contends that the Government had a duty "to administer the contract, during the

course of its performance, in a way that does not materially increase the risk that was assumed by the surety when the contract was bonded." *Id*. (citing to *National Surety Corp*. v. *United States*, 118 F.3d 1542, 1546 (Fed. Cir. 1997)). This duty is "implicit in the three-party relationship between [the Government], the contractor, and the surety." Pl. Mot. at 19. The Government acted unlawfully when it made a  progress payment to the contractor and did not consider the surety's interests as a third-party to the contract, "regardless of any notice of default or possibility of default." *Id*. at 18-19 (emphasis omitted).

### 2.    The Government's Response.[1]

The Government responds that Plaintiff's Motion For Reconsideration argues "one of the same arguments" made in Plaintiff's March 2, 2009 Response To The Government's Motion To Dismiss." Gov't Opp. at 2. Therein, Plaintiff devoted eight pages to the same arguments reasserted in Plaintiff's Motion For Reconsideration. *Id*. The court considered and rejected Plaintiff's theory that notice is unnecessary, where the surety already was performing under the contract. *Id*. at 3 (citing *United Surety*, 87 Fed. Cl. at 589). As the court concluded, "the dispositive question is not whether notice was necessary, but whether or not the surety exercised its duty to provide the Government with *adequate* notice to trigger the Government's stakeholder duty." *Id*. (quoting *United Surety*, 87 Fed. Cl. at 589). Therefore, Plaintiff's Motion For Reconsideration simply restates an argument that was fully considered and rejected by the court. *Id*. at 3-4.

Plaintiff also fails to establish any manifest error or mistake of fact. *Id*. Plaintiff relies on dicta from *Balboa* that has been subsequently overruled. *Id*. at 4. As the United States Court of Appeals for the Federal Circuit explained in *Ins. Co. of the West* v. *United States*, 243 F.3d 1367 (Fed. Cir. 2001), "[a]lthough in *Balboa* we reserved the question whether there was a contract or privity between the [G]overnment and a surety . . . we have since held that there is no such relationship." *Id*. at 1370. In addition, in *Balboa* the surety gave adequate notice of default before the allegedly improper payments. Gov't Opp. at 4-5 (citing 775 F.2d at 1160). *Balboa*'s discussion of the Government's duty to exercise discretion in making payments to the contractor or surety arose only after the surety had given adequate notice of default to the Government. *Id*. at 5.

Plaintiff also misreads *National Surety* to create a duty to make payments to the surety. *Id*. In that case, however, the Federal Circuit held only that the Government had a duty not to administer a construction contract in an arbitrary and capricious manner. *Id*. at 5-6. In this case, the November 4, 2008 Complaint did not allege that the Government failed properly to administer the contract at issue. *Id*. Further, in *National Surety,* the Federal Circuit held that the surety could recover retainage prematurely paid by the Government to a defaulting contractor, because in doing so, the Government also violated of the terms of the contract. *Id.* at 5 (citing 118 F.3d at 1547-48). In that case, the Government breached a duty to the surety, by overpaying the contractor. In this case, however, the

---

[1] The Third-Party Defendant declined to file a response to Plaintiff' Motion For Reconsideration.

Government did not breach the contract by making the March 26, 2003 progress payment to the contractor. Gov't Opp. at 6. In addition, Plaintiff also gave no notice of default. *Id.* ("[Plaintiff's] right to the payment had not yet arisen because Selpa was not declared in default until July 3, 2003 and [Plaintiff's] November 12, 2002 letter did not assert Selpa to be in default."). For this reason, the November 4, 2008 Complaint did not allege that the work was not complete or that the progress payment was not due on March 26, 2003. *Id***.** Therefore, the Government had "no discretion to do anything but make payment to the contractor." *Id.*

The Government also argues that *United States Fire Ins.* is distinguishable from this case. *Id.* at 7. The "abuse of discretion" in *United States Fire Ins.* "related to whether the Government failed to properly administer the contract thereby impairing the completion of the project." *Id.* (citing *United States Fire Ins.,* 78 Fed. Cl. at 335). In this case, however, the November 4, 2008 Complaint did not "allege any improper administration of the construction contract or even that [Third-Party Defendant] was not entitled to be paid under the terms of that contract." *Id.* Instead, Plaintiff argued that the Government had a duty to consider Plaintiff's "then future and unperfected claims of equitable subrogation." *Id. United States Fire Ins.*, however, places no such obligation on the Government. And, there is no other precedent to support Plaintiff's argument that "where the contract is properly administered and the surety has not given notice of default, the Government is obligated to direct payments to the surety." *Id.*

Finally, the November 4, 2008 Complaint did not allege that the Government knew that the March 26, 2003 progress payment to Plaintiff was not going to be used on the project. *Id.* at 8. All payments made under the contract were for work performed in the past, less any retainage. *Id.* Therefore, any money due to and paid to the contractor would have been applied toward completion of the project. *Id.*

### 3.      Plaintiff's Reply.

Plaintiff replies that "in view of the circumstances surroundings [sic] the administration of the contract at the time the erroneous payment was made, the Government conduct was an abuse of discretion." Pl. Reply at 1-2. This argument requires an analysis of what is reasonable conduct in light of the facts known to the Government at the time of the payment, but was not addressed by the court prior to the June 13, 2009 Motion For Reconsideration. *Id.* at 2.

Plaintiff counters that *Ins. Co. of the West* did not overrule *Balboa*, because the Government still owes a surety the duty "to exercise its discretion responsibly and to consider the surety's interests in conjunction with other problems encountered in the administration of the contract." *Balboa*, 775 F. 2d at 1164. *Ins. Co. of the West* simply extinguished the possibility, left open in *Balboa*, that a surety could use privity of contract as a basis to raise claims against the Government. Pl. Reply at 3. Moreover, *Ins. Co. of the West* did not relieve the surety's obligation to provide the Government with notice. *Id.* For this reason, *Ins. Co. of the West* "must be construed as referring to the specific duty as a stakeholder that arises after notice of default[.]" *Id.* This is different from the Government's duty to consider the surety's interest in the contract. *Id.*

Plaintiff concedes that *National Surety* dealt only with the Government's violation of the express terms of the contract, and no such violation is alleged in the November 4, 2008 Complaint. *Id*. at 4.  But *National Surety* still stands for the proposition that the Government may not waive or modify the terms of a contract "without consideration of the surety's interests."  *Id*. (quoting *National Surety*, 118 F.3d at 1547).  Therefore, "*National Surety* does make clear that there are circumstances in which the [G]overnment has to consider the surety's interests, prior to adequate notice of default."  *Id*. at 5.  Even if no privity exists between a surety and the Government, a surety has a role in the contracting process and *National Surety* holds that this "role entitles it to not have its potential liability increased without justification."  *Id*.  The November 4, 2008 Complaint alleged sufficient facts to support a claim that the Government failed to consider the surety's interests, when it knew the surety was performing under the contract to the detriment of the surety's interests.  *Id*. at 6-7.  Therefore, just as in *National Surety*, the Government has impaired Plaintiff's interest by failing to acknowledge Plaintiff's performance as a surety, that in turn, gave Plaintiff the right to the contract balance as a subrogee.  *Id*. at 7.

Finally, Plaintiff cites *United States Fire Ins*., 78 Fed. Cl. 308 (2007) to establish that the duty described in *Balboa* has not been overruled.  Pl. Reply at 8.  The Government continues to have a duty to "administer [a] contract with the goal towards project completion and in doing so [the Government] should 'exercise, practical, common sense, reasonable discretion.'"  *Id*. (quoting *United States Fire Ins*., 78 Fed. Cl. at 335).  In this case, the Government violated that duty when it made payments with knowledge that the surety was enabling project completion, rather than the contractor.  *Id*. at 10.  The November 4, 2008 Complaint in this case properly alleged that the Government knew of Plaintiff's efforts to perform at the time of the March 26, 2003 progress payment.  *Id*. at 9 (citing Compl. ¶¶ 13-16).  Therefore, even if the term "improper administration of the contract" does not appear in the Complaint, sufficient facts are alleged to establish this claim.  *Id*.  And, although the Government had considerable leeway to make or withhold payments to affect contract completion, only payment to Plaintiff (or withholding payment altogether) would achieve Contract completion in this case.  *Id*. at 10.  The Government failed to do either.  *Id*.

## B.   The Court's Resolution.

The June 30, 2009 Memorandum Opinion and Final Order considered Plaintiff's argument that notification of default or imminent default was "superfluous and unnecessary."  *United Surety*, 87 Fed. Cl. at 589.  The court rejected this argument, as a matter of law.  *Id*. at 591.  Instead, the court held that the Government owed *no duty* to a surety until notice is received.  *Id*. (citing *Fireman's Fund Ins. Co.* v. *United States*, 909 F.2d 495, 499 (Fed. Cir. 1990) (recognizing that the "[G]overnment as obligee owes no equitable duty to a surety . . . unless the surety notifies the government that the principal has defaulted under the bond . . . notice by the surety is *essential* before *any* governmental duty exists.")) (emphasis added).

Plaintiff also argues that outside of the doctrine of equitable subrogation, the Government violated a "duty, implicit in the three-party relationship between [the Government], the contractor, and the surety," to administer the contract in a responsible manner.  Pl. Mot at 18-19.  This

5

argument, however, fails to recognize that the court's jurisdiction is dependant on the doctrine of equitable subrogation. *United Surety*, 87 Fed. Cl. at 587 ("Because United Surety became a performing and paying surety for Selpa, United Surety has satisfied the jurisdictional requirements of the Tucker Act under the doctrine of equitable subrogation."). Although a surety bond creates a third-party relationship, the surety does not assume privity of contract with the Government. *Ransom* v. *United States*, 900 F.2d 242, 244-45 (Fed. Cir.1990) (holding that there is no privity of contract between the Government and a surety, since the Government is not a party to the agreement between the surety and the contractor, the Government never undertakes an obligation to the surety). Without privity, the surety may only satisfy the jurisdictional requirements of the Tucker Act by invoking the doctrine of equitable subrogation. *United Surety*, 87 Fed. Cl. at 586. In this case, the November 4, 2008 Complaint alleges entitlement to relief through the doctrine of subrogation. Compl. ¶ 27. Plaintiff's alternative "implicit duty," however, does not establish an independent money-mandating obligation.

Likewise, Plaintiff's reliance on *National Surety* is misplaced. Therein, the United States Court of Appeals for the Federal Circuit held that the Government violated a duty to the surety when the terms of a contract were violated (*i.e.*, releasing a retainage to the contractor) to the detriment of the surety. *National Surety*, 118 F.3d at 1546-47. In this case, however, the November 4, 2008 Complaint did not allege that the Government in any way violated the terms of the relevant contract. Instead, the November 4, 2008 Complaint alleges that Plaintiff was entitled to the progress payment as an *equitable* subrogee. Compl. ¶ 27. In addition, subsequent to *National Surety*, the United States Court of Appeals for Federal Circuit has held that, other than a contractually obligated retainage, a surety may only recover "amounts paid by the United States to the contractor *after the surety had notified the government of default* by the contractor under the bond." *Insurance Co. of the West*, 243 F.3d. at 1371. In addition, *United Surety* emphasized that the Government's duty under the doctrine of equitable subrogation arises only after notification, that was not provided in this case. *United Surety*, 87 Fed. Cl. at 591-92.

Finally, the November 4, 2008 Complaint alleges that an erroneous progress payment was made by the Government to the contractor after Plaintiff became a performing surety. Compl. ¶¶ 21-24. The November 4, 2008 Complaint, however, does not independently allege that the Government also improperly administered the contract by virtue of making the progress payment. As a threshold matter, a new argument cannot be made for the first time on a motion for reconsideration. *Bluebonnet Savings Bank, F.S.B.* v. *United States*, 466 F.3d 1349, 1361 (Fed. Cir. 2006) ("[A]n argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived and not preserved for appeal."). As for the merits, Plaintiff's re-characterization of the November 4, 2008 Complaint as including a claim of improper contract administration is based solely on the contention that the "[G]overnment was well aware" that Plaintiff was performing as a surety. Pl. Reply at 9. The court, however, rejected the argument that the Government's knowledge (if any) of Plaintiff's performance was sufficient to trigger a duty to the surety. *United Surety*, 87 Fed. Cl. at 593 ("The Government's independent knowledge of contractor default is irrelevant."). As for the Government's decision to make contract payments to the contractor and the contractor's bank, the court relied on the United States Court of Appeals for

the Federal Circuit's holding that "the Government had *no legal obligation* to suspend a progress payment 'merely upon the unsupported request of a contractor's surety.'" *Id*. at 592**.** (quoting *Balboa Ins. Co.*, 775 F.2d at 1164 (Fed. Cir.1985)) (emphasis added).

## III.    CONCLUSION.

For these reasons, the court has determined that Plaintiff did not establish a manifest error of law or mistake of fact.  Accordingly, Plaintiff's July 13, 2009 Motion for Reconsideration is denied.

**IT IS SO ORDERED**.

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**